UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
JAKIL, S.P.A.,

                             Plaintiff,

-v-

                                                     08 CV 5613 (DC)
                                                     ECF CASE

AGRIMPEX CO. LTD.,

                             Defendant,
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO VACATE THE ATTACHMENT

Plaintiff, Jakil S.P.A. ("Jakil" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Agrimpex Co. Ltd.'s ("Agrimpex" or "Defendant") Motion to Vacate the Maritime Attachment Order, which this Honorable Court has issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "Rule B"). *See* Docket Entry #3. Because the Plaintiff has met its burden of alleging a cognizable claim in admiralty as required under Rule B, Defendant, Agrimpex's, motion should be denied.

## FACTS

The relevant facts pertaining to the instant motion to vacate are set forth in the accompanying Declaration of George M. Chalos, Esq. dated September 5, 2008 (hereinafter "Chalos Dec."). The facts stated in the Chalos Declaration are incorporated by reference herein. This Memorandum of Law will make reference to, and discuss as necessary the facts set forth in the Declaration.

## ARGUMENT

### I. JAKIL HAS CARRIED ITS BURDEN OF ESTABLISHING THE VALIDITY OF THE ATTACHMENT OF THE DEFENDANT'S PROPERTY

It is well established that "an order of maritime attachment is available where the plaintiff has an in personam claim against the defendant that is cognizable in admiralty, the defendant cannot be found in the district, property of the defendant can be found in the district, and there is no statutory or general maritime law prohibition to the attachment." *Tramp Oil & Marine Limited v. Ocean Navigation (Hellas)*, 2004 U.S. Dist LEXIS 7974 (S.D.N.Y. May 7, 2004) *citing* 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 21-2, at 470 (2d ed. 1994).

### A. Background of maritime attachment.

The provisional remedy of maritime attachment is "a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." *Aqua Stoli Shipping, Ltd. V. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006). Maritime attachments have found favor in the courts because of the widely recognized fact that it is frequently more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. "Maritime parties are peripatetic, and their assets are often transitory." *Aqua Stoli* at 443. Indeed, "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance." *Navalmar (U.K.) Ltd. V. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F. Supp. 2d 399 (S.D.N.Y. 2007) (citing *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996)). Thus, the

policy underlying maritime attachment "has been to permit the attachment of assets wherever they can be found . . . ." *Aqua Stoli* at 443. "This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained." *Id.*

Rule B of the Supplemental Rules for Admiralty and Maritime Claims, Fed. R. Civ. P. Supp. R. B, governs the procedure by which a party may attach another party's assets. Rule B provides in relevant part:

> If a defendant is not found within the district, ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating an authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

"The order of attachment may be requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required." *Aqua Stoli*, 460 F.3d at 438. Supplemental Rule E(4)(f) provides for a prompt hearing as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules ....

**B. The Basic Rule**

In *Aqua Stoli*, the Second Circuit Court of Appeals clarified the circumstances under which a Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty

3

> claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe *vacatur* is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Id.* at 445 (footnotes omitted).

*Aqua Stoli* made clear that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." *Aqua Stoli*, 460 F.3d at 447. As the *Aqua Stoli* Court explained, so long as the technical requirements of Rules B and E are met, "an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli*, 460 F.3d at 445.

In so holding, the Second Circuit expressly rejected the reasoning of numerous district court decisions that had engaged in a broader inquiry under Rule E(4)(f), including those that adopted "a needs test," requiring the plaintiff to show that, even if the defendant cannot be found within the district, plaintiff actually needs security in order to collect on an eventual judgment. *Aqua Stoli* at 446. The Court also rejected the approach taken by the district court in *Royal Swan Navigation Co. v. Global Container Lines, Ltd.*, 868 F. Supp. 599 (S.D.N.Y. 1994), which "would impose a fact-intensive

4

inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated." *Aqua Stoli* at 446-47. Rather, the Court held that "Congress chose a determinate rule rather than a flexible standard to ensure that attachments may be obtained with a minimum of litigation." *Id.* at 443.

## II. PLAINTIFF HAS PROPERLY PLED A *PRIMA FACIE* MARITIME CLAIM

While the Second Circuit has not addressed the specific question of what a plaintiff must show to make out a "*prima facie*" admiralty claim, some district courts have held that a plaintiff must make an affirmative showing in the Rule E(4)(f) hearing that there exist "reasonable grounds" or "probable cause" for the attachment. *See, e.g., Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006). Under this standard, "although a minimal *prima facie* showing is sufficient to justify an attachment under Rule B, under Rule E(4)(f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." *Id.* at 325.

Numerous more recent decisions have concluded, however, that a "reasonable grounds" inquiry is wholly inconsistent with the Second Circuit's holding in *Aqua Stoli* that a plaintiff need only make a *prima facie* showing to sustain an attachment under Rule B. In *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006), the court observed as follows:

> Although *Aqua Stoli* does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment," – including a "valid *prima facie* admiralty claim against the defendant" – implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry.

> For a plaintiff to show that "it has a valid *prima facie* admiralty claim against the defendant, in the context of maritime attachment, it appears that a plaintiff need not prove anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. [Citations omitted.]

*See also Sixteen Thirteen Marine S.A. v. Congentra A.G.*, 2008 W.L. 2885307 at *7 (S.D.N.Y. 2008) ("This Court need only be satisfied that STM's claims 'are not frivolous.'" [citation omitted.]; *Padre Shipping, Inc. v. Yong He Shipping*, 553 F.Supp.2d 328, 331-32 (S.D.N.Y. 2008); *SPL Shipping Ltd. V. Gujarat Cheminex Ltd.*, 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y. 2007) (Noting the analysis in *Tide Line* "is consistent with the limited inquiry contemplated by *Aqua Stoli* and comports with a basic definition of the term "*prima facie*."); *Dolco Investments, Ltd. v. Moonriver Dev., Ltd.*, 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ("The Court agrees with the weight of authority in this district, and will apply the *prima facie* standard, as it more closely comports with the Second Circuit's rejection of the 'broader Rule E(4)(f) inquiry' that the reasonable grounds test would necessarily include."); *Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee*, 2007 U.S. Dist. LEXIS 72694, * 7-8 (S.D.N.Y. 2007) ("Maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing. Moreover, *Aqua Stoli* implies that a plaintiff need not provide evidence to satisfy its burden under Rule E(4)(f)." [Citations omitted.]). *See also Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V.*, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007); *OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd.*, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007); *Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 2007 U.S. Dist. LEXIS 74477, * 22-23 (S.D.N.Y. 2007).

As stated by the court in *Ice Flake Maritime Ltd. v. Westcoast AS*, 2007 U.S. Dist. LEXIS 75677 at *4 (S.D.N.Y. 2007): "Certainly it is not the office of a motion to vacate a maritime attachment to examine a claim under Rules 12 or 56 of the Federal Rules of Civil Procedure."

In this case, Jakil's claim is cognizable in admiralty. There is no dispute that the Defendant cannot be found within the district and that there is no statutory or general maritime law prohibition to the attachment. Accordingly, Plaintiff respectfully submits that Agrimpex's motion to dismiss should be denied.

### III. THE DISPUTE BETWEEN THE PARTIES FALLS WITHIN THIS COURT'S ADMIRALTY AND MARITIME JURISDICTION

The Defendant does not dispute that it wholly failed to honor its obligation to provide Plaintiff with a series of cargoes of Sudanese durra feterita. *See* Defendant's Memorandum of Law at p. 2. Rather, the Defendant has simply argued that Jakil's claims are a simple breach of sale and purchase contracts, which do not give rise to a maritime claim. The Defendant's assertions mischaracterize the nature of the dispute, as well as the scope of this Court's jurisdiction in an attempt to nullify the integral maritime portion of the contracts between the parties.

"In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping." 1-XII *Benedict on Admiralty* § 182 (2005). Where "the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it

is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V BODENA*, 829 F.2d 293, 302 (2d Cir. 1987).

The Supreme Court has recognized that "the boundaries of admiralty jurisdiction over contracts – as opposed to torts or crimes – being conceptual rather than spatial, have always been difficult to draw." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). In general, courts "focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611 (1991). In doing so, courts look for something with a "genuinely salty flavor." *Kossick*, 365 U.S. at 742.

In *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14 (2004), the United States Supreme Court recently clarified the test for determining whether a contract is maritime. In *Kirby*, the Supreme Court held that a contract is maritime when a primary objective of the parties' contract is to accomplish the transportation of goods by sea, even where there are non-maritime components to the contract. *Id.* at 24; *see generally Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir. 2005) (explaining *Kirby*). In reaching this conclusion, the Court implemented a conceptual approach to contracts involving maritime and non-maritime elements and directed that the jurisdictional inquiry be focused "upon whether the nature of the transaction was maritime." *Id.* at 25 (*citing Exxon*, 500 U.S. at 608; *Sisson v. Ruby*, 497 U.S. 358, 367 (1990) and *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)).

Under the relevant contracts in this case, there is no denying that the delivery of the cargoes at issue; the subsequent maritime transportation; and the ultimate delivery of same were integral to the agreements between the parties. As more fully set forth in the

accompanying Chalos Declaration, the contracts at issue required Defendant to supply a series of cargoes to Plaintiff on a "cost and freight" basis and expressly detailed the conditions to be met by Defendant for the transportation and delivery, which included the range of ports where the cargoes could be loaded on board the vessel; the maximum arrival draft for the vessels; the terms upon which discharging would be commenced; the conditions for which the Defendant, as seller, would permit discharge of the vessel(s) without presentation of original bills of lading; and the contractually agreed discharging rate of the vessel upon which the cargo was to be loaded; the hours between which the vessel could be unloaded at the discharge port; the specific design and dimensions of the vessel to carry the subject cargo; the vessel's qualification, classification, and rating; and the parties' respective obligations for the preparation and presentation of necessary "shipping documents" at the discharge port. *See* Chalos Declaration at paragraphs 5-39. Defendant failed to honor all such obligations. Moreover, the parties, themselves, expressly agreed to permit legal action outside of arbitration in order to obtain security for any and all claims which might arise. *See* Clause 26(c) of the GAFTA 61 Contract, at Chalos Dec. Exhibits #1-5.

As outlined by the Second Circuit in *Folksamerica, supra*, courts are required to "make a 'threshold inquiry' into the subject matter of the dispute [and] '[b]efore attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an issue related to maritime interests has been raised.'" *Folksamerica*, 413 F.3d at 312, (*quoting Atlantic Mutual*, 968 F.2d at 199) (internal citations omitted). In this case, it is clear that the subject matter of the contract directly relates to maritime interests. The Rule B application was filed for Jakil to obtain security

9

of its pending London arbitration. As is clear from Defendant's own submission, the damages Plaintiff is seeking arise out of Defendant's failure to provide a cargo and failure to load the subject vessels specified for the carriage of the cargoes at issue.

In this case, an as stated above, the subject matter of the dispute clearly implicates the business of maritime commerce. The delivery of the cargo required a significant ocean voyage and was integral to the completion of the Defendant's obligations under the contract. Under these circumstances, Jakil has clearly demonstrated that the subject matter of the dispute is not so attenuated from the business of maritime commerce that admiralty jurisdiction should be denied.

In its motion to vacate, the Defendant attempts to analogize the instant case to several other cases where contracts therein were held to be non-maritime. Those cases are easily distinguishable and are actually supportive of Plaintiff's position.

- o In *Shanghai Sinom v. Exfin*, 2006 AMC 2950 (S.D.N.Y. 2006), unlike here, Judge Lynch found that the contract at issue was not a maritime contract because the defendant did not have any obligation to plaintiff to transport the goods by sea.

- o In *Lucky-Goldstar, Int'l (America) Inc. v. Phibro Energy Int'l Ltd.*, 958 F.2d 58 (5th Cir. 1992), a pre-*Kirby* decision, the Court found that the specific contract at issue in that matter was non-maritime, stating that "[a] principal purpose of the contract was the land-based sale of over a thousand metric tons of toluene."

- In *Luckenbach S.S. Co. v. Central Argentine Co.*, 298 F. 344 (S.D.N.Y. 1924), another pre-*Kirby* case, the issue was whether a third party could be impleaded into a pending action that was not maritime in nature.

- In *Aston Agro-Industrial AG v. Star Grain Ltd.*, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y.), Judge Daniels found that the contract between Agro and Star Grain was not maritime because Star Grain's liability to Aston under the specific facts of that case, had nothing to do with any maritime obligations.

In the contracts at issue, Agrimpex's default was caused by its failure to load a series of cargoes, which it was contractually obligated to load, transport by sea, and subsequently discharge to the Plaintiff from the vessels with the specific qualifications called for in the contracts at issue.

Based on the foregoing, the subject matter of the dispute before this Court falls within its admiralty jurisdiction, and, as such, it is respectfully submitted that Defendant's motion to vacate should be denied in all respects.

## IV. COURTS WHICH HAVE RECENTLY STUDIED THIS ISSUE AGREE THAT THE CONTRACTS AT ISSUE PROPERLY GIVE RISE TO MARITIME CLAIMS

As counsel for Defendant rightly points out, Jakil does refer and rely on Judge Preska's recent decision in *Noble Resources v. Yugtranzitservix and Silverstone*, Docket No. 08 cv 3876 (LAP) (S.D.N.Y. July 23, 2008). For Your Honor's ready reference, a true and complete copy of the transcript of the hearing and decision is attached to the Chalos Dec. as Exhibit 6. *See also* Plaintiff's Memo of Law at Exhibit 2. In that matter, Judge Preska looked to the contract at issue and held that maritime transportation was integral to the agreement, as it touched upon "the business of maritime commerce." *Id.* at

3-4. Although Defendant tries to distinguish Judge Preska's reasoning and ultimate conclusion, the cases are not distinguishable.

Moreover, Judge Preska is not alone. More recently, Judge Lynch denied a motion to vacate an attachment sought to secure a foreign arbitration claim arising out of an alleged breach of a sale and purchase contract for the defendant's failure to provide cargoes of sugar. *See Noble Resources v. Sarl Ouest Import*, Docket No. 08 cv 3587 (GEL) (S.D.N.Y. Aug. 12, 2008). A copy of the transcript of the *Noble v. Sarl Ouest* oral argument and decision is attached to the Chalos Dec. at Exhibit 7. Here, just as in the *Noble v. Sarl Ouest* matter, the loading, transportation, and discharge of the cargo at issue are "far from being attenuated from the business of maritime commerce." *Id.* at 20.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this Court deny Defendant's motion to vacate the attachment.

Dated: Oyster Bay, New York  
September 5, 2008

CHALOS & CO, P.C.  
Attorneys for Plaintiff  
JAKIL S.P.A.

By: _____  
George M. Chalos (GC-8693)  
123 South Street  
Oyster Bay, New York 11771  
Tel: (516) 714-4300  
Fax: (866) 702-4577  
Email: gmc@chaloslaw.com

TO:  Anne C. LeVasseur, Esq. (via email)  
     Chuck E. Murphy, Esq. (via email)  
     *Attorneys for Defendant*